FILED
01 MAY -4 AM 9:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

**LISA BROWN, as Mother and Next Friend of KeAndre Brown, a minor, et al.,**

Plaintiffs,

vs.

CV-99-N-2664-W

**LAIDLAW TRANSIT, INC., LAIDLAW TRANSIT MANAGEMENT COMPANY, INC., THE CITY OF TUSCALOOSA SCHOOL BOARD, and BETTY ESCATO,**

Defendants.

ENTERED
MAY 04 2001

## MEMORANDUM OF OPINION

### I. Introduction

The court has for consideration defendant City of Tuscaloosa School Board's Motion for Summary Judgment [Doc. 50]. The motion has been briefed and is ripe for decision. Upon due consideration, defendant's motion is granted.

### II. Statement of Facts[1]

#### A. Parties

The Board was established and operates pursuant to Alabama Code §§ 16-11-1, et seq. (1975). The Board is responsible for the general administration and supervision of the

[1]The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed or favorable to the non-movant. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994).



public schools and educational interests of the City of Tuscaloosa. Laidlaw Transit, Inc. ("Laidlaw") is a corporation that contracted with the Board to transport school pupils for the 1995 through 2000 school years. Betty Escato ("Escato") was employed by Laidlaw to operate a school bus in the transportation of students. KeAndre Brown is a thirteen (13) year old African American male who filed suit by and through his mother and next friend, Lisa Brown. KeAndre Edwards is a nine (9) year old African American male who filed suit by and through his mother and next friend, Tiffany Edwards. Rokia Tinker is a twelve (12) year old African American female who filed suit by and through her mother and next friend, Gwendolyn Tinker. Tiarra Edwards is a thirteen (13) year old African American female who filed suit by and through her mother and next friend, Rose Brock. Dustin Bush is a thirteen (13) year old African American male who filed suit by and through his mother and next friend, Georgia Bush. Darius Dixon is a nine (9) year old African American male who filed suit by and through his mother and next friend, Eincey Dixon. Ashley Rice is a twelve (12) year old African American female who filed suit by and through her sister and next friend, Dequinare Rice.

During the 1998-1999 school year, the minor plaintiffs resided in the Delaware Jackson Public Housing Project ("Delaware Jackson") and attended Rock Quarry Elementary School ("Rock Quarry"). Rock Quarry is administered by the Board. During the 1998-1999 school year, the minor plaintiffs were transported to school in the morning and home in the afternoon, on a bus owned by Laidlaw and operated by Escato. Escato is not now, and never has been, an employee of the Board. The Board did not renew its contract with Laidlaw for the transportation of school pupils following the 1999-2000 school year.

The Board has operated its own bus fleet and employed its own drivers to transport school pupils since the termination of Laidlaw's contract at the end of the 1999-2000 school year.

**B. Board's Relationship with Laidlaw**

The Board's contract with Laidlaw specifies that Laidlaw is required to insure that drivers meet state regulations in regard to application, age, fitness, confidence, conduct, licenses, physical examinations, and continuing eligibility. The contract goes on to specify that Laidlaw, while engaged in carrying out and complying with the terms and conditions of the contract, is an independent contractor and is not an officer, agent or employee of the board. Laidlaw accepts full responsibility for driver punctuality, courtesy, driving habits, ability to control student passengers, pre-check inspection of the bus and complete training of drivers. Laidlaw accepts full responsibility for investigations of all bus problems and for insuring that drivers, and transportation of students, comply and operate within the rules, regulations and the law. The Board does not have the right to control employees of Laidlaw and Laidlaw is responsible for all aspects of the operation and maintenance of the board buses. All bus routes, bus stops and operating schedules are determined and prepared by Laidlaw. Following the execution of the Board's contract with Laidlaw in 1995, all Board employees in the bus shop were given the option of accepting employment with Laidlaw or remaining with the Board on the same terms and with the same benefits that existed before the execution of the contract. Following execution of the contract, Laidlaw assumed direct control and supervision of all bus drivers and transportation-related support personnel, whether an employee of Laidlaw or the Board. Escato was never employed by the Board, was not hired by the Board, trained by the Board, paid by the Board, or under its

supervision or control. The Board retained absolutely no right to control or supervise Laidlaw bus drivers such as Escato. In fact, the Board enacted a policy entitled "Coordination with Private Contractors Policy" which specified that even Board employees performing work contracted with a private company were required to follow the work rules, safety rules, work schedules, employee handbook, supervision and other work related conditions made by the private company.

**C. Complaints about Escato and Laidlaw**

During the last two weeks of February 1999, Brown complained to Cora Turnipseed ("Turnipseed"), a Laidlaw employee, regarding the tardiness of the bus and Escato yelling and cursing at the children. Brown thought Turnipseed worked for the Board. Brown does not know if any action was taken.

In late February, Louise Crawford ("Crawford"), Assistant Superintendent, sent a memo to Deborah Chandler ("Chandler"), Laidlaw Terminal Manager, stemming from a complaint by parent Kandi Robinson ("Robinson"). In the memo, dated February 23, 1999, Crawford stated that Escato had failed to drop off a child. Escato brought the child to the Laidlaw terminal and called the child's parent to pick up the child. When Robinson arrived, she asked the driver why she had not dropped the child off at the proper place, and the driver allegedly said she "was sick of niggers." (Movant's Evidence, Vidrine depo., Ex.2 at Ex. 8 at 2). Two Laidlaw employees witnessed the incident and claim Escato never said it. The child's mother said she heard this happened to other children.

In the beginning of March, Brown contacted Kelvin Croom ("Croom"), the attendance director for the Tuscaloosa City Schools, and requested the transfer of her

children to a different bus and school. Brown did not mention any discriminatory acts by Escato as a reason for the requested transfer. Croom responded that "a transfer was not allowed because they already transferred from Texas over to here in [sic] Alabama and that another transfer would hold them back and that they couldn't do it."

During the last two weeks of March 1999, Brown complained to Turnipseed and Chandler regarding tardiness of the bus and treatment of children on the bus. According to Brown, no corrective action was taken.

In the month of April, Brown observed that the children would come home from school hot and sweaty. Brown followed Escato's bus during the last two weeks in April and the first week in May. Brown witnessed Escato pull over on the side of the road and make the children close the windows. Escato did this five times in April and everyday during the first week of May. Brown also heard Escato curse the black children. Brown complained to Laidlaw and the Board about what she saw. The Board and Laidlaw promised to look into it. Brown and Dixon called the Board in April to request another driver. The Board told them to call Laidlaw.

On May 5th, Brown spoke to Crawford. Brown told Crawford of Escato's mistreatment of the children, the untimeliness of the bus, and the inaction on the part of the Board and Laidlaw in response to her complaints. On May 6th, Brown called the Board and told Calton Carter, Crawford's secretary, of her complaints. In a memorandum from Crawford to Chandler dated May 7th, Crawford listed eight specific complaints, including alleged racism and physical abuse. On May 16th, Croom called Brown and told her she could transfer her children to another school. Brown declined because there were only two

days left before the end of the school year. Croom told Brown that he was not aware of the situation with Laidlaw until recently, Laidlaw was a contractor, and had the Board known they would have done something about it.

Other parents also complained. Gwendolyn Tinker mentioned in her deposition that she thinks she recalls calling at one time and she does not know with whom she spoke. She told them only that the bus was late; no mention of cursing the children. The person with whom she spoke told her that the Board contracted with Laidlaw to provide the service and had nothing to do with it, and she should call Laidlaw. This is the only time she called the Board. Additionally, Geogia Bush called Rock Quarry school a few times because she was concerned that the children were arriving home late.

The children also complained about Escato. Hildredth, the Principal of Rock Quarry Elementary School, was told by Dustin Bush, one of the children on the bus, that Escato cursed the children who lived in the Delaware Jackson Housing Project. Bush told Hildredth once, while getting off the bus, that Escato "cussed us." Hildredth dismissed Dustin's complaints and told him to go to class. It is unclear if Bush was describing the same incident in his deposition when he said "[t]he whole class, the whole bus, all the Delaware people, we all told her, but she just told us to go to our class." He said they told her of their complaints in her office.

**D. Causes of Action**

The plaintiff alleges the following causes of action: violation of the Fourteenth Amendment via 42 U.S.C. § 1983 by all defendants; violation of 42 U.S.C. § 1981 by all defendants; intentional infliction of emotional distress by Laidlaw and Escato; assault by

Laidlaw and Escato; Battery by Laidlaw and Escato; and violation of the Alabama Constitution by Laidlaw and Escato.

## III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial;

however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative,

summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**IV. Discussion**

Defendant seeks summary judgment on the two claims against them.

**A. Section 1983**

To state a claim via 42 U.S.C. § 1983, the conduct in question must have been perpetrated by a state actor. The Eleventh Circuit recently outlined the three tests to apply when determining if a private party can be considered a "state actor":

> Only in rare circumstances can a private party be viewed as a 'State actor' for section 1983 purposes. & quot; *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). Indeed, to hold that private parties . . . are State actors, this court must conclude that one of the following three conditions is met: (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) "the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint

> participant in the enterprise[ ]" ("nexus/joint action test"). *NBC, Inc. v. Communications Workers of America*, 860 F.2d 1022, 1026-27 (11th Cir. 1988).

*Rayburn v. Hogue*, No. 99-14729, 2001 U.S. App. LEXIS 2347, at *16-17 (11th Cir. Feb. 16, 2001) (determining whether foster parents, as contractors with the state, are state actors).

The plaintiffs do not seem to argue and the court does not find evidence to support an application of the nexus/joint action test. The Board did not hire, fire, train, or in any way direct Laidlaw employees. The court could construe some of plaintiff's argument as claiming the Board significantly encouraged the actions of Escato by referring the claims of discrimination to Laidlaw and "hiding" behind a contractor. However, this contention is not supported by the evidence. The Board did not encourage Escato's actions, and when the incidents of discrimination were brought to the attention of the Board, the Board notified Laidlaw and requested Laidlaw appraise the Board of what actions were taken in response to the Board's memorandum. Moreover, the Board did not receive complaints of racism and physical abuse until a few weeks before the end of the school year. Upon receipt of those complaints, the Board took action, notifying Laidlaw of the problems.

Plaintiffs' most direct argument is that Escato should be considered a state actor under the public function test. The plaintiffs claim that the Board has a non-delegable duty to ensure children are transported to school, and therefore Escato is performing "a public function that was traditionally the exclusive prerogative of the State." *Id*. Plaintiffs cite the Alabama Code, § 16-27-1, to support this proposition.

> The State Board of Education shall prescribe rules and regulations:
>
> (1) Requiring all local boards of education which provide transportation services for pupils going to and from public elementary and secondary

> schools of Alabama or in school-related activities, and the presidents of all state community, junior and technical colleges and directors of all state technical institutes and trade schools which provide transportation services for pupils going to and from said technical institutes and trade schools or community, junior and technical colleges to employ a competent supervisor or manager of such transportation services, whether such transportation services are provided in publicly owned or privately owned buses;
>
> (2) Requiring periodic safety inspection of all vehicles used for transporting pupils, whether such vehicles are publicly or privately owned;
>
> (3) Requiring and providing for special training and licensing of drivers of all vehicles used to transport pupils to and from school and in all school-related activities, whether such vehicles are publicly owned and operated or operated under contract with a private owner.

*Id*. This statute, however, acknowledges that local boards can contract for the service. The statute also does not direct local boards to take any role in transport by independent contractors.

Additionally, plaintiffs allege the Board's non-delegable duty theory is supported by Alabama case law. The plaintiffs cite *Brewer v. Hatcher Limosine Serv., Inc*., 708 So. 2d 163 (Ala. Civ. App. 1997) to support their contention. In *Brewer*, the Court of Civil Appeals of Alabama found there was a question of fact as to whether an independent contractor providing bus service for a school district was liable for the negligence of a second independent contractor with which the first party contracted to provide school bus service. *Id*. at 165-66. The other case cited by the plaintiffs,[2] *Dixie Stage Lines v. Anderson*, 134 So. 23 (Ala. 1931), was cited by the Alabama Supreme Court for the proposition that "'where one operates a motor carrier under a government franchise, he assumes liability for acts done by others to whom he grants permission to use his franchise and permit.' He may not delegate his rights under his franchise and permit and thus avoid liability." *Ex parte Hicks*,

---

[2]The plaintiffs cite to a quotation from this case cited in *Brewer*.

537 So. 2d 486, 489 (Ala. 1988). These cases do not address the liability of a school board for the actions of an independent contractor bus provider. Plaintiff provides the court with no basis, and the court knows of no other reasoning, to find Escato is a state actor.

Further, the Third Circuit came to the same conclusion in a section 1983 case involving a bus company contracted to provide transportation for students at a public school. In *Black v. Indiana Area Sch. Dist.*, 985 F.2d 707 (3d Cir. 1993), school children alleged they were sexually molested by their school bus driver, Clark Myers, on the way to school. Myers was employed by a private bus company, Vernon R. Claypoole, Inc., serving as an independent contractor. As Myers and the bus company were not employees of the state, the court discussed whether their actions were "'fairly attributable to the state.'" *Id.* at 710. The court found "they were not performing a function that has been "traditionally the exclusive prerogative of the state" and there was no state regulation that "compelled or even influenced" the conduct which is alleged to have violated plaintiffs' constitutional rights." *Id.* at 711. Therefore, both defendants were not state actors and the school district could not be held liable for his actions. However, even if the court found Escato was a state actor, the plaintiffs' section 1983 claim against the Board fails.

> Because there is no respondeat superior liability under §§ 1983, liability can attach to the Board only if the alleged unconstitutional gender discrimination was caused by an "official policy" or "custom" of the Board.
>
> . . . .
>
> Plaintiff can demonstrate an official policy or custom under one of the following three theories: (1) "a policy statement, ordinance, regulation or decision officially adopted and promulgated by [the Board]'s officers," *Monell*, 436 U.S. at 690; (2) a custom that, while not formally adopted by the Board, was "so permanent and well settled" as to have "the force of law," *id.* at 691; or (3) a decision by an official who possesses "final authority to establish municipal policy with respect to the action ordered." *Brown v. City*

> *of Ft. Lauderdale*, 923 F.2d 1474, 1480 (11th Cir. 1991) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986)).

*Blalock v. Dale County Bd. of Educ.*, 84 F. Supp. 2d 1291, 1311-12 (M.D. Ala. 1999). Plaintiff alleges "there was an informal policy by the School Board to attempt to refer all complaints away from the Board to Laidlaw," therefore alleging the second method of proof: custom. The evidence, viewed in the light most favorable to the plaintiff, shows there were five times when employees of the Board were notified of possible discriminatory behavior.[3] First, in February, a parent complained to Crawford that her child was not dropped off and she had to pick up the child at the Laidlaw terminal. When the parent arrived, Escato told her she was "sick of niggers." Two Laidlaw employees who were present at the discussion said Escato never said it. The earliest Brown, or any other parent involved in this lawsuit, notified a Board employee of allegations that Escato mistreated black children on her bus was sometime in April 1999. Brown does not know when she called or to whom she spoke, but she says she called the Board and complained that Escato made the children close the windows on the bus on hot days, and there was no air conditioning on the bus. Then, in May, Brown complained twice to Crawford and her secretary. Additionally, the children on the bus complained to their Principal that Escato "cussed them." There is no evidence, however, that any other bus driver acted discriminatorily against black children. Further, there is no evidence that any member of the Board knew about the alleged discriminatory acts. Moreover, there is no evidence of discrimination by Escato or any other bus driver

---

[3]The court does not consider complaints that the bus was late as complaints of discrimination. There is no evidence the parent who complained that the bus was late also alleged the tardiness of the bus was due to discriminatory acts of Escato.

after May of 1999. This evidence cannot support a finding that the Board had a custom of discriminating against black children. Defendant's motion is granted as to this claim.

**B. Section 1981**

Defendant's motion also is granted as to this claim. *Butts v. County of Volusia*, 222 F.3d 891, 893 (11th Cir. 2000) ("§ 1983 constitutes the exclusive remedy against state actors for violations of the rights contained in § 1981.").

An appropriate judgment will be entered with this memorandum of opinion.

Done, this 4th of May, 2001.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE